635 A.2d 1105

**John R. KENNEDY, Administrator of the Estate
of Kathleen Kennedy, Deceased,**

v.

**CITY OF PHILADELPHIA and Commonwealth of Pennsylvania,
Torts Litigation Unit–Office of Attorney General and PA Department of Transportation and James H. Hartbauer,**

**Appeal of CITY OF PHILADELPHIA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 1993.

Decided Dec. 16, 1993.

Reargument Denied Feb. 16, 1994.

Alan C. Ostrow, Asst. City Sol., for appellant.

Lawrence D. Finney, for appellees.

Before DOYLE and SMITH, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

In this case involving a collision between an automobile and two pedestrians, we are required to determine whether the City of Philadelphia (City) may be held liable for negligence in failing to paint additional traffic control lane markings on a state highway.

The City appeals from the February 10, 1993 order of the Court of Common Pleas of Philadelphia County (trial court) denying the City's motion for new trial or judgment notwithstanding the verdict and granting the petitions to mold the verdicts of Lewis Scott (Scott), an incompetent whose estate is represented by guardian Cora Smith, and the deceased Kathleen Kennedy (Kennedy), whose estate is represented by administrator John R. Kennedy. In addition to denying the motion for a new trial and judgment notwithstanding the verdict, the trial judge also molded Kennedy's verdict from $600,000.00 to $336,382.45, Scott's verdict from $2,000,000.00 to $1,167,977.50 and entered judgment on both molded verdicts.

Because we conclude that Kennedy and Scott failed to establish that they met the specific notice requirements for liability under Section 8542(b)(4) of what is commonly called the Political Subdivision Tort Claims Act (Act),[1] the "traffic controls" exception to governmental immunity, we are compelled to reverse. In view of our decision on governmental immunity, we do not discuss any issues related to the amount of the molded verdicts or the manner of calculating delay damages.

On October 3, 1981, an automobile driven by James Hartbauer (Hartbauer) struck Ms. Kennedy and Mr. Scott while they were walking along Westbound Frontage Road in Philadelphia County. Hartbauer was en route to Liberty Bell Race Track (Liberty) when he collided with the pedestrians.

From his home, Hartbauer had traveled on Interstate 95, exited onto Woodhaven Road and had driven on Woodhaven in a northwesterly direction. From Woodhaven Road, he exited

1.  42 Pa.C.S. § 8542(b)(4).

onto the exit ramp leading to Millbrook Road. Traveling in the left lane of the two-lane exit ramp, he moved into the right lane of the ramp in order to turn into Liberty's driveway. Liberty's driveway was located to the right of Westbound Frontage Road, several hundred feet from the intersection of Westbound Frontage and Millbrook roads. Frontage Road is parallel to Woodhaven Road, but separate from Woodhaven's main thoroughfare. After passing another vehicle and moving into the right lane of the ramp, he spotted the two pedestrians, but was so close to them that he was unable to prevent the accident.

The collision occurred four hundred feet east of the east curb line of Millbrook Road and seven feet into the traveling lanes of Westbound Frontage Road. Kennedy died as a result of the impact and Scott was rendered incompetent due to massive brain damage.

Kennedy's administrator and Scott's guardian sued 1) Liberty for breaching its duties as a possessor of land; 2) the City for dangerous condition of the street markings and/or traffic controls; 3) the Commonwealth of Pennsylvania, Department of Transportation (DOT) for the defective design of the highway;[2] and 4) Hartbauer. At the end of the liability phase, the jury found in favor of Hartbauer and Liberty, but against the City (45%), DOT (15%) and Kennedy and Scott for contributory negligence (40%). Prior to the damages phase of the trial, the City, DOT, Kennedy's administrator and Scott's guardian stipulated to a verdict in favor of Scott in the amount of $2,000,000.00 and in favor of Kennedy's estate in the amount of $600,000.00.

The evidence at trial was sufficient to establish that Woodhaven Road, Frontage Road and the two-lane exit ramp were all state roads, but that the City had painted whatever lane markings were on the roads on the date of the accident. At that time, the lane markings consisted solely of a single white dotted line separating the two west-bound lanes on Frontage

**2.** Subsequent to filing post-trial motions, the Commonwealth of Pennsylvania, Department of Transportation settled with both Scott's guardian ad litem and Kennedy's administrator.

Road. The Kennedy and Scott expert witnesses opined that the City was negligent in failing to paint additional white lines. Their counsel contends:

Tragically, the existing traffic control pavement line misled pedestrians with respect to where they were walking relative to the road and available berm, and misled drivers with respect to merging traffic conditions and their placement upon the roadway. This solitary line actively deceived the pedestrians, Kennedy and Scott, into believing that they could walk in the area where they were struck, without being warned or alerted to the impending danger. . . .

Beside[s] the single, inadequate white dashed line on Westbound Frontage Road, the lack of additional, proper lane markings, the lack of pavement edgelines and the absence of other street markings which would designate the race track driveway entrance, also created a situation where pedestrians were placed in the line of danger with regard to motor vehicle traffic without warnings or guidelines to alert them to the potential hazard. . . . The proper marking of the roadway would have included a designation of the entrance to the race track, a demarcation of the shoulder and an area for safe pedestrian passage.

Brief of Kennedy and Scott at 3.

█ There are two issues before us for review.[3] The first is whether the trial court erred in concluding that the City's actions in painting some lane markings on a state highway properly subjected it to liability,[4] despite the fact that the City

3. Our scope of review of a decision of a trial court denying motions for judgment notwithstanding the verdict or for a new trial is limited to a determination of whether the court abused its discretion or committed an error of law. *Phillips v. City of Philadelphia,* 148 Pa.Commonwealth Ct. 175, 610 A.2d 509 (1992).

4. In most cases, the City is immune from liability for damages caused by its acts or the acts of its officials and employees. 42 Pa.C.S. § 8541. The General Assembly in 42 Pa.C.S. § 8542, however, waived the grant of immunity when two distinct conditions are satisfied: 1) the damages would be recoverable under statutory or common law against a person unprotected by governmental immunity, and; 2) the negligent act of the local agency or its employees which caused the injury falls within one

had no statutory duty to erect traffic controls and no contract with DOT to do so. The second issue is whether the trial court erred in concluding that the City had actual or constructive notice of the specific dangerous condition causing the accident.[5]

Section 8542(b)(4), which contains the requirements that must be met to impose liability on a local agency, provides as follows:

(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

(4) Trees, traffic controls and street lighting.—A dangerous condition of trees, traffic signs, lights or street lighting system under the care, custody or control of the local agency, except that *the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition* at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542(b)(4) (Emphasis added). Accordingly, we must determine whether a dangerous condition existed and whether the local agency had actual notice of that condition or could reasonably be charged with notice of the same. We conclude that the evidence was sufficient to permit the jury to conclude that a dangerous condition existed, but that it was

of the limited categories of exceptions to immunity listed in Section 8542(b), 42 Pa.C.S. § 8542(b).

5. Because we conclude that Kennedy and Scott did not prove notice on the part of the City, we need not reach the issue of whether the trial court erred in molding the verdict on the basis of *Woods v. Commonwealth of Pennsylvania, Department of Transportation,* 531 Pa. 295, 612 A.2d 970 (1992), instead of on the basis of the parties' agreement that delay damages be limited to the statutory cap on damages found in Section 8553(b) of the Act, 42 Pa.C.S. § 8553(b).

not sufficient to permit a finding that the City had notice of the specific condition which caused the injury.

## I. The City's Exercise of Discretionary Authority to Paint Lane Markings:

The City first argues that, under the Act, it cannot be held liable for failure to paint traffic lines on a state highway because no such liability exists under the Section 8542(b)(4) traffic controls exception. Further, it contends that, under that exception, the *absence* of traffic controls cannot be a dangerous condition of a traffic control. *Bryson v. Solomon,* 97 Pa.Commonwealth Ct. 530, 510 A.2d 377 (1986), *petition for allowance of appeal denied,* 519 Pa. 668, 548 A.2d 257 (1988) (City's failure to erect any traffic controls at the intersection of a city avenue and a state road did not fall under exception to immunity); *Farber v. Engle,* 106 Pa.Commonwealth Ct. 173, 525 A.2d 864 (1987) (City's failure to erect any traffic controls on its street, part of which is a legislative route, did not fall under exception to immunity); *Bendas v. Township of White Deer,* 131 Pa.Commonwealth Ct. 138, 569 A.2d 1000, *petition for allowance of appeal denied,* 526 Pa. 639, 584 A.2d 321 (1990) (Township's failure to exercise its discretionary power to erect a traffic control at intersection of state and township roads did not fall under exception to sovereign immunity).

Kennedy and Scott argue that the City negligently undertook and performed a duty to control traffic by placing an inadequate broken white traffic control line on Westbound Frontage Road. They contend that there is no absence of a traffic control. We agree.

■ It is true that the City is under no statutory authority to paint lines on a state highway. *Carter v. City of Philadelphia,* 137 Pa.Commonwealth Ct. 152, 585 A.2d 578 (1991). Here, however, the City exercised discretionary authority by placing *some* lane markings on the state highway. (R.R. 70a, 73–4a.) Thus, it is not true, as the City seems to be implying, that it was held liable for a failure to paint *any* lines; it was held liable for its failure to paint *enough* lines. City-implemented traffic controls existed; there was no absence of

traffic control devices as in *Bryson, Farber* and *Bendas.* Accordingly, its actions in choosing to delineate part of that state highway constituted the catalyst for potential liability in this case, not its failure to paint any lines.

As noted, two expert witnesses testified for Kennedy and Scott that there was a dangerous condition at the accident site, the inadequate and misleading traffic control markings,[6] and that the condition was a substantial factor in causing the accident. (R.R. 86a–93a, 97a–104a, 105a–109a.) Therefore, we conclude that the City's argument that there can be no liability because there were no traffic controls is without merit.

■ The City secondly argues that it cannot be held liable for its failure to paint additional lane markings because no contract exists between the City and DOT imposing lane marking maintenance responsibility on the City. We find the absence of a contract in effect at the time of the accident to be irrelevant, however, in light of the City's affirmative action of exercising its discretionary duty to erect traffic controls. *See City of Philadelphia v. Messantonio,* 111 Pa.Commonwealth Ct. 364, 533 A.2d 1127 (1987), *petition for allowance of appeal denied,* 519 Pa. 668, 548 A.2d 257 (1988) (holding that once the City undertakes a discretionary duty, it subjects itself to potential liability for performing that duty in a negligent manner.)

## II. The City's Legal Notice of the Dangerous Condition Created by its Lane Markings:

■ Because we conclude that painting some lines constitutes erection of a traffic control device, we must address the

6. *Compare Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992). There, a three year old child was fatally injured when a drunk driver obeyed an erroneously placed directional arrow causing him to careen into the Crowells' car. In addition to suing the drunk driver under traditional tort law, the Crowells sued the City under Section 8542(b)(4) of the Act, the traffic controls exception.

The Supreme Court held that the jury's verdict against the City was proper because a City employee had placed the specific directional sign, which created the dangerous condition.

City's alternative argument that it did not have notice of the dangerous condition created by the absence of adequate street lining at the accident site. The City cites *Fenton v. City of Philadelphia,* 127 Pa.Commonwealth Ct. 466, 561 A.2d 1334, *aff'd per curiam,* 526 Pa. 300, 585 A.2d 1003 (1991), for the proposition that it had inadequate notice of a dangerous condition on Westbound Frontage Road. We find that *Fenton* controls our decision here.

In *Fenton,* an accident between a tractor trailer driver and an automobile driver occurred when the plaintiff's automobile was passing the tractor-trailer at the intersection of Richmond and Butler Streets in the City of Philadelphia. There the plaintiff argued that the accident was caused by the City's "inadequate and confusing" line painting on a state highway, i.e. that the City should have painted a left-turn lane in addition to the other lane markings which had previously been painted by the City. We concluded that plaintiff failed to establish an exception to governmental immunity because she offered only proof of a dangerous condition in general, but did not prove that the City had actual or constructive notice under 42 Pa.C.S. § 8542(b)(4) of the specific left-hand turning lane problem. As we noted in *Fenton:*

> Plaintiff offered further testimony that because of periodic resurfacing of Richmond Street, the City on a number of occasions was required to repaint the lane markings. We believe it crucial that *none of this evidence dealt with the specific problem of the lack of a left hand turning lane,* the lynchpin [sic] of the plaintiff's case.

*Id.,* 127 Pa.Commonwealth Ct. at 469, 561 A.2d at 1336 (Emphasis in original). Thus, even though the City was familiar with the truck traffic problem at the Richmond–Butler intersection, Fenton simply failed to establish that it had notice of a left-hand turning lane problem.

Similarly, Kennedy and Scott presented the testimony of a City police officer, who was familiar with the vehicular and pedestrian traffic at the accident site. The police officer, however, never testified that he had knowledge of the specific dangerous condition: the lack of dotted lines separating an

area for pedestrians from the vehicle lanes. Thus, his testimony was simply insufficient to prove notice on the part of the City as required by 42 Pa.C.S. § 8542(b)(4).

The trial court cites two non-governmental immunity cases, *Penn v. Isaly Dairy Co.*, 413 Pa. 548, 198 A.2d 322 (1964) and *Finney v. G.C. Murphy*, 406 Pa. 555, 178 A.2d 719 (1962), in support of its determination that, because the City created the dangerous condition, it had notice as a matter of law of that condition due to its prior conduct. We find *Penn* and *Finney*, however, to be distinguishable.

*Penn* and *Finney* involved store customers slipping on floors which had been waxed and oiled, respectively, by the defendant store owners. In *Penn*, wherein the Court cited *Finney*, the Supreme Court stated that, where a dangerous condition was created by a defendant's own antecedent conduct, a plaintiff need not prove notice. Thus, in both cases, the specific slippery condition was created by the store owners or their employees.

Unlike *Penn* and *Finney*, the case before us for disposition involves governmental immunity. In addition, in *Penn* and *Finney*, the dangerous condition was self evident: slippery floors due to coats of wax or oil. Here, the dangerous condition was more sophisticated, as evidenced by the experts' testimony, and Kennedy and Scott accordingly were required to present precise and specific evidence to satisfy Section 8542(b)(4)'s detailed notice requirement.

We conclude that there simply was no evidence from which the jury could have concluded that the City had actual or constructive notice of the specific dangerous condition arising out of the absence of a pedestrian lane. Thus, because we find *Fenton* to be legally indistinguishable, we are compelled to reverse the trial court. Accordingly, we need not reach the delay damages issue.[7]

7. In the event that delay damages are found to be awardable, we note that the parties have an agreement on that issue. Brief of Kennedy and Smith at 24–5.

568

For the above reasons, we reverse the trial court's denial of the City's motion for a new trial or judgment notwithstanding the verdict.

## *ORDER*

**AND NOW,** this 16th day of December, 1993, we hereby reverse the trial court's denial of the City's motion for judgment notwithstanding the verdict.