# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda Lamberson, : 
           Appellant :
            :
           v. :
            :
Southeastern Pennsylvania : No. 1009 C.D. 2023
Transportation Authority : Submitted: March 4, 2025


BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE MATTHEW S. WOLF, Judge


OPINION BY
JUDGE COVEY                        FILED: April 2, 2025

       Linda Lamberson (Lamberson) appeals from the Philadelphia County Common Pleas Court's (trial court) July 20, 2023 order entering judgment in favor of Southeastern Pennsylvania Transportation Authority (SEPTA) and against Lamberson pursuant to a nonsuit entered on July 3, 2023. Lamberson presents one issue for this Court's review: whether the trial court erred by granting the nonsuit. After review, this Court affirms.

       SEPTA owns, operates, and maintains the Bristol train station located at the Washington Street and Prospect Street intersection in Bristol, Pennsylvania. On October 10, 2018, Lamberson was walking on the concrete platform on the southbound side of the Bristol train station train tracks. While stepping from the platform onto a waiting train, a portion of the concrete platform cracked beneath Lamberson's foot and her foot and leg slipped into the hole, causing her to fall. Lamberson claimed that she sustained serious and disabling injuries as a result of

the fall.  On July 28, 2020, Lamberson and her husband, Albert Lamberson, filed an Amended Complaint in the trial court.[1]

The trial court held a jury trial on July 3, 2023.  After Lamberson rested her case, SEPTA moved for a nonsuit, which the trial court granted.  On July 13, 2023, Lamberson filed a post-trial motion.  On July 15, 2023, the trial court denied the post-trial motion.[2]  On July 20, 2023, the trial court entered judgment in favor of SEPTA and against Lamberson pursuant to the nonsuit entered on July 3, 2023.  Lamberson appealed from the trial court's entry of judgment.[3]  On August 9, 2023, the trial court directed Lamberson to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement).  On August 17, 2023, Lamberson filed her Rule 1925(b) Statement.  On September 18, 2023, the trial court filed its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion).

---

[1] A Board of Arbitrators held a hearing on October 27, 2022, wherein the Arbitrators found in favor of Lamberson and against SEPTA in the amount of $16,906.75.  Lamberson appealed therefrom and demanded a jury trial.  On April 21, 2023, Lamberson filed a Praecipe to Discontinue as to Albert Lamberson only.

[2] The trial court's order was entered on July 17, 2023.

[3] Lamberson filed her appeal on July 28, 2023, in the Pennsylvania Superior Court, which transferred the matter to this Court on September 13, 2023.

> In reviewing the entry of a nonsuit, [an appellate court's] standard of review is well[ ]established: we reverse only if, after giving appellant the benefit of all reasonable inferences of fact, we find that the fact[-]finder could not reasonably conclude that the essential elements of the cause of action were established.  Indeed, when a nonsuit is entered, the lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement.  The fact-finder, however, cannot be permitted to reach a decision on the basis of speculation or conjecture.

*Munoz v. Children's Hosp. of Phila.*, 265 A.3d 801, 805-06 (Pa. Super. 2021) (quoting *Rolon v. Davies*, 232 A.3d 773, 776-77 (Pa. Super. 2020)).

Lamberson argues that the trial court erred by granting the nonsuit because she presented evidence that, if believed by the jury, established that SEPTA had constructive notice that the train platform was in disrepair and needed repairs before the accident. Lamberson asserts that to impose liability under what is commonly known as the Sovereign Immunity Act (Act), 42 Pa.C.S. §§ 8501-8564, a plaintiff only needs to prove that SEPTA had constructive notice of the defect. Lamberson contends that a video SEPTA took of the accident, which she introduced into evidence, along with three photographs, showing a view of the location where she fell and the platform's substantial deterioration, that were admitted into evidence without objection, were sufficient to establish constructive notice. Lamberson cites *Carletti v. Commonwealth, Department of Transportation*, 190 A.3d 766 (Pa. Cmwlth. 2018), *Angell v. Dereno*, 134 A.3d 1173 (Pa. Cmwlth. 2016), and *Miller v. Lykens Borough Authority*, 712 A.2d 800 (Pa. Cmwlth. 1998), to support her position.

SEPTA rejoins that Lamberson presented no testimony from a SEPTA employee or an expert to show that the alleged dangerous condition could have been discovered on reasonable inspection, and the cases she relies on are inapposite. SEPTA further retorts that Lamberson commuted to work daily on the train, and she did not notice any problem with the platform, as evidenced by her testimony that the platform crumbled **without warning**. Further, SEPTA asserts that the video shows the platform **suddenly** collapsing. SEPTA therefore maintains that on this record, the evidence was insufficient to show that SEPTA knew or should have known of a dangerous condition of the platform that caused its collapse. SEPTA declares that the mere happening of an accident is not evidence of negligence.

Initially, Section 8522 of the Act provides:

> **(a) Liability imposed.--**The General Assembly, pursuant to section 11 of [a]rticle I of the Constitution of

3

Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

**(b) Acts which may impose liability.--**The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . . .

**(4) Commonwealth real estate, highways and sidewalks.--**A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

42 Pa.C.S. § 8522.

This Court has explained:

This exception does not specifically provide for actual or constructive notice of the dangerous condition of the highway. However, because it is a prerequisite that an action must be maintainable at common law, and at common law the action required such notice, **the [C]ommonwealth agency must have actual or constructive notice of the dangerous condition** to maintain an action under the exception to sovereign immunity.

For the governmental entity to be charged with **constructive notice** of a dangerous condition of a roadway, **the condition had to be apparent upon**

4

> **reasonable inspection**. *See Good v. City of Phila*[.], . . .
> 6 A.2d 101 ([Pa.] 1939); *Dep*[*'t*] *of Transp*[.] *v. Patton*,
> 686 A.2d 1302 . . . ([Pa.] 1997). Whether there has been
> constructive notice is typically a jury question, but **the
> issue may be decided by the court "when reasonable
> minds could not differ as to the conclusion**." *Patton*,
> 686 A.2d at 1305.

*Carletti*, 190 A.3d at 776-777 (emphasis added; footnote omitted).

In *Carletti*, a bicyclist brought a negligence action against the Department of Transportation (Department), therein alleging that he sustained serious injuries in a crash caused by an irregular patch of roadway. The Delaware County Common Pleas Court entered judgment on the jury verdict for bicyclist and subsequently denied the Department's motion for judgment notwithstanding the verdict or, alternatively, a new trial. The Department appealed to this Court, arguing, *inter alia*, that the bicyclist's claim did not fall within an exception to sovereign immunity because there was no evidence that the Department had notice of the defect. Specifically, the Department contended that the question of constructive notice should not have been submitted to the jury because reasonable minds could not differ as to whether there was sufficient evidence that it had constructive notice of the dangerous condition.

> This Court concluded:

> While there is no evidence regarding precisely how long
> the dangerous condition existed, images of the hump
> dating back to over a year before the accident occurred
> were included in the record, as well as comparative images
> from a few months after the accident. There is no doubt
> the defect was apparent on reasonable inspection because
> [the Department's Assistant Manager] testified that if he
> observed the condition while inspecting the road, he would
> have taken corrective action by milling the road to take out
> the hump and other imperfections.

*Carletti*, 190 A.3d at 777.

5

Here, the photographs Lamberson introduced at the jury trial were taken **after** the accident not before it. *See* Reproduced Record (R.R.) at 51a ("Q. **After the accident**, did you ask someone to go to the station and take photos of the place where you fell? A. Yes, I did.") (emphasis added). In addition, Lamberson did not present testimony from any SEPTA employee or an expert to show that the alleged dangerous condition could have been discovered before the accident on reasonable inspection. Accordingly, *Carletti* is inapposite.

In *Angell*, a motorcycle operator's estate (Estate) brought a wrongful death and survival action against the township and the borough, therein alleging that the road where the motorcycle was clipped by an oncoming truck, which was located within feet of the boundary between the township and the borough, consisted of a dangerous condition and that they were negligent in failing to correct it. The Allegheny County Common Pleas Court entered summary judgment in favor of the township and the borough. The Estate appealed to this Court, arguing, *inter alia*, that its evidence established the existence of a dangerous condition on Bellevue Avenue that contributed to the fatal accident and that it was for a jury to decide whether the municipalities had actual or constructive notice of a dangerous condition.

This Court concluded:

> [Two neighborhood residents] reported the "dangers posed by the intersection of Schwitter Avenue and Bellevue Avenue" without specifying the narrowness and limited sight distance on Bellevue [Avenue]. However, [one of the neighborhood residents] specifically told West View [Borough] that a stop sign was needed on Bellevue [Avenue] at the intersection, the identical conclusion reached by [the Estate's expert, Ronald W. Eck, P.E., Ph.D. (]Dr. Eck[)]. Notably, both [m]unicipalities argue[d] that the dangers presented by the narrow street and limited sight distance were so obvious that signs were not necessary. This argument is at odds with their

6

> contention that they did not have constructive notice of the danger.
>
> In any case, **there is a factual dispute on the question of constructive notice**. Police officers from the [m]unicipalities patrolled near the crash site prior to the fatal accident, and Dr. Eck opined that the danger should have been identified on a routine inspection by the [m]unicipalities. **Constructive notice is a question of fact to be decided by the jury**, not the [trial] court. If the dangerous conditions, *i.e.*, a too-narrow street with limited sight distance, are deemed by the jury to be "apparent upon reasonable inspection," the jury could find that the [m]unicipalities had notice. *Patton*, 686 A.2d at 1304. The trial court erred in granting summary judgment on the issue of actual and constructive notice.

*Angell*, 134 A.3d at 1183 (emphasis added). Here, again, Lamberson did not present any evidence of prior reports of a dangerous condition or an expert to testify concerning the alleged dangerous condition. Accordingly, *Angell* is also inapposite.

Finally, in *Miller*, a motorist who was injured when he drove over a trench, in which the city utility department (Utility) installed water pipes, brought an action against the Utility. The Dauphin County Common Pleas Court granted the Utility's post-trial motion for directed verdict, and the motorist appealed to this Court, which reversed and remanded. On remand, the Dauphin County Common Pleas Court found that the Utility was not liable and denied the motorist's post-trial motions seeking a new trial on the issue of damages. The motorist appealed to this Court, arguing, *inter alia*, that because the Utility created the dangerous condition causing the motorist's injuries, the trial court erred in submitting the issue of notice to the jury because notice that the trench could have subsided should have been imputed to the Utility as a matter of law. Specifically, the motorist contended that the notice required by the Act is nothing more than normal constructive notice and that where the defendant's own antecedent conduct causes the dangerous condition, the plaintiff need not establish either actual or constructive notice.

7

This Court concluded:

> [N]otice of a latent defect in the placement of the fill that could not be discerned upon reasonable inspection **cannot** be imputed to the [Utility] simply because it created the dangerous condition. . . . [T]he . . . plaintiffs[] were not excused from establishing that the [Utility] had actual or constructive notice of the latent defect in time to correct it, even though it was the [Utility's] negligence that created the dangerous condition.

*Miller*, 712 A.2d at 803 (emphasis added). While Lamberson relies on *Miller* to support her position that the issue of notice must go to a jury, *Miller* supports SEPTA's position that the occurrence of an accident does not prove a dangerous condition.

> Here, Lamberson testified:
>
> Q. And how long did you work for [PECO] altogether?
> A. 13 years.
> Q. And were you working for PECO at the time of this incident in October of 2018?
> A. Yes, I was.
> Q. And what was your work location as of 2018?
> A. Here in the city. 2301 Market Street in Philadelphia.
> . . . .
> Q. And did you commute to and from work every day?
> A. Yes, I did.
> Q. And did you travel from Bristol to Center City and then back?
> A. Yes, I did.
> Q. How did you commute?
> A. Train. I took the train.

R.R. at 49a.

Lamberson further related:

Q. [] Lamberson, before October 10th, 2018, were you aware that the platform at the SEPTA train station in Bristol was crumbling?

A. No.

Q. Did you have any warning whatsoever that the concrete was going to crumble beneath your feet on that day?

A. No.

R.R. at 52a.

Lamberson confirmed on cross-examination:

Q. Okay. And getting the train at Bristol Station was your regular -- part of your regular commute to PECO, correct?

A. Correct.

Q. All right. At the time of the incident, you had been using Bristol Station for several years, correct?

A. Yes, ma'am.

Q. All right. And we watched the video of the incident. Isn't it true that three people boarded ahead of you without difficulty?

A. Yes, ma'am.

Q. You said that you did not see the problem with the platform before you stepped on it; is that correct?

A. Correct.

Q. All right. And you also said that you were not aware of any problems with the platform prior to the day of the incident; is that correct?

A. Yes, ma'am.

R.R. at 57a.

Concerning the video and photographs that Lamberson presented, the trial court concluded:

The [t]rial [c]ourt did not commit reversible error by, removing from the jury, the ability to decide the issue of constructive notice based upon the photographic and video evidence depicting the location of the fall and the

9

condition of the platform at the time of the fall. The photographs in question were a depiction of the Bristol train platform, reported to have been taken some time after the accident occurred. While she was not the person who took the photographs, [Lamberson] testified that they accurately depicted the area of the platform where the accident occurred. **Although the photographs showed the condition following the accident**, they are **irrelevant to proving actual or constructive notice of the offending condition** which allegedly caused [Lamberson's] harm. There were no photographs of the platform prior to the accident, upon which, the [j]urors could rely to make a factual assessment as to whether there was an observable defect or danger.

As to the video, while it depicted the Bristol train platform in the moments immediately preceding, during, and following the incident, it did not satisfy the burden of demonstrating that there was an observable[] defect or hazard on the platform. Several other passengers are observed boarding a waiting train ahead of [Lamberson], stepping in the same location that she would ultimately step and where the concrete crumbled beneath her feet. **The video did not reveal an observable defect or hazard on the platform prior to the actual accident**.

Rule 1925(a) Op. at 14-15 (emphasis added; internal record citation omitted). This Court discerns no error in the trial court's reasoning. Lamberson did not present any evidence that the alleged dangerous condition was "apparent upon reasonable inspection[,]" *Carletti*, 190 A.3d at 777, thus "reasonable minds could not differ as to the conclusion" that Lamberson did not establish constructive notice. *Id.* (quoting *Patton*, 686 A.2d at 1305). Under these circumstances, the trial court did not err by entering a nonsuit.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda Lamberson, : 
          Appellant : 
          : 
         v. : 
          : 
Southeastern Pennsylvania :   No. 1009 C.D. 2023
Transportation Authority : 

## O R D E R

AND NOW, this 2nd day of April, 2025, the Philadelphia County Common Pleas Court's July 20, 2023 order is affirmed.

_____
ANNE E. COVEY, Judge