SHAWANO OIL COMPANY, Respondent, vs. CITIZENS STATE BANK and others, Appellants.

*October 15—November 10, 1936.*

101

*P. J. Winter* of Shawano, for the appellants.

For the respondent there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein*.

ROSENBERRY, C. J.   The plaintiff contends that on March 25, 1933, the date as of which the stabilization agreement took effect, it was entitled as a matter of law to have the amount of its deposit applied to the payment of its note.   If the deposit had been so applied there would have remained due to the plaintiff $173.68 according to the finding of the trial court.   The plaintiff signed the stabilization agreement conditionally, the condition being that it did not waive its right to offset, and under such circumstances the remainder of $173.68 would have been subject to the terms of the stabilization agreement.

The question for decision here is, Was the plaintiff deprived of its right to offset by the operation of the stabilization agreement and the law under which it was made?   That the plaintiff had a right to have its deposit applied on its note, although it was not due on February 4, 1933, when the bank closed its doors, is established by the decisions of this court. *Jones v. Piening* (1893), 85 Wis. 264, 55 N. W. 413; *Smith v. American National Bank* (1934), 215 Wis. 288, 254

N. W. 548. The defendants, however, contend that under the stabilization statute, sec. 220.07 (16), Stats. (ch. 15, Laws of Sp. Sess. 1931–32), when the stabilization agreement was signed by eighty per cent of the depositors and approved by the commissioner of banking, it became binding upon the plaintiff in all respects as if the plaintiff had signed, citing *Corstvet v. Bank of Deerfield* (1936), 220 Wis. 209, 263 N. W. 687; *Shepherd v. Mount Vernon Trust Co.* (1935), 269 N. Y. 234, 199 N. E. 201.

In the *Corstvet Case* the court had under consideration the banking law as amended and modified by chs. 10 and 15, Laws of Sp. Sess. 1931–1932. At that time the legislature had not attempted to deal with the matter of the right of offset. The matter of offset was first dealt with by sec. 4 of ch. 6 of the Laws of 1933, which created sub. (17) of sec. 220.07, Stats., published February 11, 1933, which read as follows:

"In the readjustment and rehabilitation of the affairs of any bank operating under a stabilization and readjustment agreement, the deposit account of any depositor shall apply as an offset on his loan account but the amount of such offset shall not exceed the proportion that the assets of said bank other than those covered by any trust agreement bear to the total assets."

Sub. (17) was repealed by ch. 245 of the Laws of 1935. It was, however, expressly provided that the repeal should not affect any contract or stabilization agreement entered into or any liability incurred or any action taken under any provision of the repealed section. Ch. 245 of the Laws of 1935 was published July 16, 1935, on which day the repeal became effective.

It is considered that when the bank closed its doors on February 4, 1933, it committed an act of insolvency. The right of the plaintiff to offset its deposit against its liability on its note to the bank accrued and became a vested right, although the application was not made as of that day but by the

court as of March 25, 1933. The provisions of sec. 220.07 (17) are no part of the process of stabilization. That subsection attempts to destroy the right of offset and to subject the deposit to the conditions that would exist if no right of offset had come into existence. Whatever its effect may be as to deposits subsequently made or rights arising due to the subsequent insolvency of a bank, it certainly could not destroy a right already existing under the stabilization statutes and the law of the state. It is quite probable that sub. (17) was enacted to do away with what seemed to the banking commission an injustice, in that it permitted depositors who were indebted to the bank to realize a greater amount on their deposits than was realized by depositors who were not so indebted.

While it was said in the *Corstvet Case* that, where eighty per cent of the depositors signed the stabilization agreement, all depositors were bound as if they had signed that agreement, what was there said related entirely to the effect of a stabilization agreement upon the right of a depositor as against the assets of the bank, and it was there held that a mere change in procedural matters did not operate to divest the plaintiff of a vested right because he had no vested right in matters of procedure.

A right of offset is more than a procedural matter. Under sec. 331.07, Stats. 1931, the plaintiff was entitled to set off as against the bank the amount of its deposit and have it applied upon the payment of its note. The plaintiff has never in any way waived its right under the statute. The stabilization agreement did not deal with the right of offset of any depositor. The trial court therefore correctly held that the deposit should be applied upon the payment of the note, and plaintiff was entitled to share with other depositors in the assets of the bank as to the amount of the deposit remaining after the payment of the note.

*By the Court.*—Judgment affirmed.