521 A.2d 95

Olympic, Inc., operating and doing business under the name of Olympic Lounge & Restaurant, Appellants *v.* McKeesport Municipal Water and City of McKeesport, Appellees.

Earl Miller, on behalf of himself and all other persons similarly situated, Appellant *v.* McKeesport Municipal Water and City of McKeesport, Appellees.

108

Argued October 6, 1986, before Judges CRAIG and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Randy L. Rayl,* with him, *Cyril H. Wecht* and *Leonard M. Mendelson,* for appellants.

*Frederick N. Egler, Jr.,* with him, *Ronald H. Heck* and *Gregory L. Fitzpatrick, Egler, Anstandig, Garrett*

& *Riley,* for appellee, McKeesport Municipal Water Authority.

*Patrick J. Shannon,* for appellee, City of McKeesport.

OPINION BY JUDGE PALLADINO, February 19, 1987:

Earl Miller, on behalf of all persons who allegedly were physically injured by a giardia infestation of the McKeesport water system, and Olympic, Inc., on behalf of all users of the giardia infested water who allegedly were economically damaged (collectively Appellants), appeal from orders of the Court of Common Pleas of Allegheny County (trial court) which sustained preliminary objections of the City of McKeesport and the McKeesport Municipal Water Authority (collectively Appellees) and dismissed Appellants' amended complaints with prejudice.

Appellants brought suit alleging that Appellees (1) negligently maintained and operated a municipal water facility which caused an outbreak of giardiasis resulting in harm to Appellants, and (2) breached a contract between the parties by failing to provide Appellants with reasonably clean and safe water, causing damage to Appellants. Appellees made preliminary objections to the claims on the grounds that suit against them was barred by the Political Subdivision Tort Claims Act (Tort Claims Act).[1] The trial court sustained the preliminary objections with leave to amend.

Appellants filed amended complaints, adding as an alternative theory of liability that Appellees' actions were taken in their "proprietary capacity" and, there-

---

[1] Act of November 26, 1978, P.L. 1399, *as amended, formerly* 53 P.S. §§5311.101-5311.803, repealed and substantially reenacted by the Act of October 5, 1980, P.L. 693, *as amended,* 42 Pa. C. S. §§8541-64.

fore, outside the protection of the Tort Claims Act. The trial court again sustained Appellees' preliminary objections on the basis of governmental immunity and dismissed Appellants' suits with prejudice. Appellants, asserting that Appellees are not immune from suit, appealed to this Court.

Appellants contend that: (1) their negligence claims fall under the exceptions to governmental immunity found in Section 8542 of the Tort Claims Act, 42 Pa. C. S. §8542; (2) breach of contract claims are outside the scope of the Tort Claims Act; (3) the delivery of water to the public is a "proprietary" function rather than a "governmental" function and, therefore, not encompassed by the Tort Claims Act; and (4) Section 306 of the Municipality Authorities Act[2] provides a waiver of sovereign immunity under the Tort Claims Act in suits against municipal authorities. We find no merit in Appellants' contentions and affirm the dismissal of their suit on the basis that the Tort Claims Act confers immunity upon Appellees.

Appellants' first and second contentions were addressed by this Court in *Gall v. Allegheny County Health Department*, 98 Pa. Commonwealth Ct. 175, 182, 510 A.2d 926, 929 (1986), where we held that the Tort Claims Act confers immunity upon Appellees, as municipalities, and "that there are no implied warranties of merchantability or fitness in connection with the sale or supply of water." In this case Appellants did not categorize their breach of contract claim as a breach of implied warranties. Appellants claim that Appellees' breach was a failure to provide "reasonably clean and safe water." This is no more than a claim that the implied warranties of fitness and merchantability were breached and, accordingly, is barred by *Gall*.

---

[2] Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §306.

Appellants' third contention, that the common law distinction between proprietary and governmental activities still exists after the enactment of the Tort Claims Act, was recently rejected in *Faiella v. Bartoles*, 102 Pa. Commonwealth Ct. 258, 517 A.2d 1019 (1986). In *Faiella* this Court held: "The current statutory exceptions to governmental immunity . . . reject the common law distinctions between proprietary and governmental activities." *Id.* at 263-264, 517 A.2d at 1021. Appellants present no arguments or precedent which persuade us to reconsider that decision.[3]

Lastly, Appellants contend that Section 306 of the Municipality Authorities Act provides a means to seek redress against Appellee, McKeesport Water Authority. They argue that the following language in Section 306 provides a waiver of sovereign immunity:

> Any person questioning the reasonableness or uniformity of any rate fixed by the Authority *or the adequacy, safety and reasonableness of the Authority's services, including extensions thereof,* may bring suit against the Authority in the court of common pleas. . . . The court of common pleas shall have exclusive jurisdiction to determine all such questions including rates or *service.*

53 P.S. §306B.(h) (emphasis added).

The language on which Appellants rely was added to the Municipality Authorities Act October 7, 1955.[4] It provided a waiver of the common law sovereign immu-

---

[3] Appellants extensively cite *Jolly v. Monaca Boro,* 216 Pa. 345, 65 A. 809 (1907) and *Curtioff v. Municipal Authority of Westmoreland County,* 40 W.L.S. 203 (1958) to support their contention. However, these cases were decided prior to the enactment of the Political Subdivision Tort Claims Act.

[4] Amendment of October 7, 1955, P.L. 671, No. 185, 1955 Pa. Laws 672.

nity for the limited purposes enunciated therein. Subsequently, common law sovereign immunity for local agencies was abolished by our Supreme Court in *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973). In response, the legislature enacted the Tort Claims Act in 1978, which specifically states that: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act or any other person." 42 Pa. C. S. §8541. That a municipal water authority is a local agency under the Tort Claims Act is not contested by Appellants. *See* Section 1991 of the Statutory Construction Act of 1972, *as amended,* 1 Pa. C. S. §1991 (1986).[5] Therefore, Section 306 of the Municipality Authorities Act is limited by the later enactment of the Tort Claims Act; if suit is barred by the Tort Claims Act, it may not be brought under a previously enacted statute. Since we have concluded that Appellants' claims are barred by the Tort Claims Act, they cannot be brought under Section 306 of the Municipality Authorities Act.

In light of the foregoing analysis, we affirm.

### ORDER

AND NOW, February 19, 1987 the orders of the Court of Common Pleas of Allegheny County in the above-captioned matters, are affirmed.

---

[5] Section 1991 contains the following relevant definitions:
'Local Authority.' When used in any statute finally enacted on or after January 1, 1975, a *municipal authority* or any other body corporate and politic created by one or more political subdivisions pursuant to statute.
'[M]unicipal Authority.' A body corporate and politic created pursuant to the . . . Muncipality Authorities Act of 1945.
1 Pa. C. S. §1991 (emphasis added).

Dissenting Opinion by Senior Judge Kalish:

I respectfully dissent.

In *Gall v. Allegheny County Health Department,* 98 Pa. Commonwealth Ct. 175, 510 A.2d 926 (1986), this court reviewed the legislative history concerning the regulations of water purification operations of municipalities and the impositions of liability upon municipal water suppliers for dangerous impurities of the water and concluded:

> The legislature intended that the municipality would be liable for injuries or damages directly resulting from the negligent maintenance of the physical facilities and equipment within the municipality control and *not for injuries resulting from the quality of the water supplied by the facilities and equipment.* (Emphasis added.)

This intent of the legislature is set forth in section 8542(b)(5) of the Judicial Code, 42 Pa. C. S. §8542(b)(5), which provides that the political subdivisions may be liable for a dangerous condition of the facilities of water systems, provided that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that the political subdivision had notice of the condition. *See Medicus v. Upper Merion Township,* 82 Pa. Commonwealth Ct. 303, 475 A.2d 918 (1984).

In *Gall,* the court further concluded that there was a failure to allege any facts which would enable the court to conclude that the facility itself constituted a dangerous condition so as to bring this action within one of the eight exceptions to immunity set forth in 42 Pa. C. S. §8542.

Here, the complaint alleges that the City and the Water Authority failed to erect sufficient barriers around the reservoir; failed to provide sufficient preven-

tive maintenance in the care and upkeep of the filtration plant; failed to clean and treat the reservoir for forty years and the filtration plant for twenty years; and failed to use reasonable standard chemical treatment and purification techniques.

While there may be no liability in connection with the quality of the drinking water, and the producers of the water are not insurers, they should be held to a standard of reasonable care in the maintenance of the equipment and to foresee that the failure to do so created an unreasonable risk of harm.

The facts alleged state a cause of action.