## Baker v. Washington Township Municipal Authority

*John N. Keller*, for plaintiffs.

*Robert T. Shoop*, for defendant Washington Township.

*John J. Sylvanus*, for defendants D. L. George & Sons Construction Company.

WALKER, *J.*, April 15, 1987 — On November 9, 1982, Jim Baker was working on a sewer construction project when a trench collapsed and killed him. At the time, Baker was working for D.L. George & Sons Construction Co. who had contracted with Washington Township Municipal Authority to install a public sewer facility. The sewer project had been designed by Nassaux-Hemsley Inc., and under the terms of its contract with the township, the township was to self-inspect the work, ensuring compliance with work and safety specifications. According to depositions taken, the township had an inspector on the work site at all times during construction.

On the day of Baker's death, he was working in an unshored, unbraced seven-foot-deep trench that violated various state and federal regulations. Decedent's wife, plaintiff Brenda Baker, brought a wrongful death and a survival action against Nassaux-Hemsley Inc. and the township on behalf of her and her minor children. Defendants filed motions for summary judgments; briefs were filed with the court and argument was heard.

A motion for summary judgment may be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035. Plaintiffs posit three separate theories for imposing liability on defendant township; that is, by defendant's contractual duty to self-inspect the project, by its position as employer of the independent contractor who decedent worked for, or by the failure of its inspector at the scene of the accident to take precautions against a dangerous condition.

If the evidence, when viewed in a light most favorable to plaintiffs, supports a legally cognizable cause of action then defendant's motion for summary judgment must fail. *Husak v. Berkel Inc.*, 234 Pa. Super. 452, 341 A.2d 174 (1975). In the present case, there are two issues that must be decided under this standard, to wit: (1) did defendant, as an employer of an independent contractor, owe a legal duty to decedent, an employee of the independent contractor, and (2) is defendant immune from suit as a local agency? These issues, duty and governmental immunity, shall be dealt with in turn.

One Pennsylvania case that appears to be factually on point is *Heath v. Huth Engg. Inc.*, 279 Pa. Super. 90, 420 A.2d 758 (1980). In *Heath*, defendant

township hired a sewer construction contractor to install sewer lines. Heath, an employee of the contractor, was digging a trench when it collapsed and buried him. The trench, in violation of state and federal laws, had not been shored or braced against collapse. The Pennsylvania Superior Court upheld judgment for plaintiff under section 416 Restatement (Second) of Torts theory, "Work Dangerous in Absence of Special Precautions." An employer who hires an independent contractor to do a particularly dangerous work cannot shield or insulate itself from liability, according to the court.

There are no relevant factual distinctions between *Heath* and the instant case. Defendant objects to *Heath* because it was decided after judicial abrogation of sovereign immunity and before the enactment of the Political Subdivision Tort Claims Act. This exception is more properly addressed to the second issue before the court, i.e. governmental immunity, rather than the initial question of duty. Under Pennsylvania law, it appears that an employer in defendant's position had a duty to take special precautions for decedent's safety.

Plaintiff also proposes that defendant may be liable because it had an inspector on the site who observed a dangerous condition but failed to act. A similar basis for liability was advanced in *Philadelphia Elec. Co. v. Julian*, 425 Pa. 217, 228 A.2d 669 (1967). In *Julian*, defendant contractor hired a subcontractor to erect guardrail fencing along the edge of a widened highway. The contractor and subcontractor were both aware of the underground gas distribution main but neither of them warned the subcontractor's employees who were observed digging in the area. The Pennsylvania Superior Court affirmed judgment for plaintiff, holding that the township was negligent in failing to warn the work-

men and, alternatively, that the contractor could have been held vicariously liable under Restatement (Second) of Torts, section 416 or 427 ("Negligent as to Danger Inherent in the Work").

In the present case, a duty was imposed on defendant under sections 416 and 427 of the Restatement (Second) of Torts, as adopted by *Julian*, or by undertaking the duty to self-inspect and placing an inspector on the work site who observed, but failed to act on a dangerous condition. The next question to be decided is whether defendant is immune from suit as a local agency.

As a preliminary matter, defendant contends that plaintiffs' action, based on Restatement (Second) of Torts, sections 416 and 427, is one of vicarious liability and that such liability is not contemplated by the Political Subdivision Tort Claims Act. This is because sections 416 and 427 impose liability on defendant for the contractor's negligence and a contractor is not a "local agency or employee thereof" for the purposes of the act, according to defendant. See *Gibson v. United States*, 567 F.2d 1237 (3d Cir. 1977), cert denied, 436 U.S. 925 (1978).

It is difficult to discern whether liability under sections 416 and 427 is predicated on the employer's own breach of a nondelegable duty or whether it is based vicariously on the independent contractor's negligence. *Julian*, supra; sections 416 and 427 as vicarious liability); *Heath*, supra (sections 416 and 427 imposing nondelegable duty on employer); *Colloi v. Philadelphia Elec. Co.*, 332 Pa. Super. 284, 481 A.2d 616 (1984) sections 416 and 427 imposing nondelegable vicarious liability). The distinctions and nuances of liabilities based on these restatement sections need not be dissected here, though, since the present case, like *Julian*, involves a question of direct negligence on defendant's part, i.e.,

the township inspector's failure to take special precautions against dangerous conditions at the site.

With regard to government immunity, the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541 et seq., provides that, "[N]o local agency shall be liable for any damages on account of any injury to a person or property caused by an act of the local agency or an employee thereof or any other person." 42 Pa.C.S. §8541. The act waives immunity, however, if the damages sought are available under common law, or pursuant to a statute creating a cause of action, and if the action falls within eight enumerated exceptions to governmental immunity. Id., section 8542. It is evident, under *Heath*, that this action is one that is recognized by common law. The only remaining issue is as to whether this suit involves a controversy that is enumerated among the exceptions to governmental immunity, as found in 42 Pa.C.S. §8542 (b).

One of the statutory exceptions to governmental immunity is for "utility service facilities." That exception applies to any "dangerous conditions of the facilities of steam, sewer, water, gas or electric systems owned by the local agency within rights-of-way." 42 Pa.C.S. §8542 (b) (5).

Defendant argues that the above provision does not apply in the present case because the damage was not caused by an existing sewer system, rather, that it was caused by the construction of a new system. For this proposition, defendant urges the court to construe the act strictly. See *Casey v. Geiger*, 346 Pa. Super. 279, 499 A.2d 606 (1985).

In the case of *Medicus v. Upper Merion Twp.*, 82 Pa. Commw. 303 475 A.2d 918 (1984), however, the Commonwealth Court held that a culvert handling the flow of surface water was a "sewer" for the purposes of the "utility service facilities" exception

to the act. If a culvert is to be considered a "sewer," then the installation of a sewer system must also be classified as such. Furthermore, this court sees no reason to distinguish between damage caused by an existing sewer and damage caused by the installation of a new sewer, especially since the act itself makes no such distinction.

If this case did not fall within the "utility service facility" exception to governmental immunity, then it would certainly fall within the "real property" exception. Under that provision, a local agency may be liable for damages caused by a local agency's negligent acts that make real property under its "care, custody or control" unsafe. 42 Pa.C.S. §8542 (b) (2). *Vince by Vince v. Ringgold School Dist.*, 92 Pa. Commw. 598, 499 A.2d 1148 (1985).

Defendant argues, then, that the property in question was not within the township's "care custody and control." An independent contractor is in possession of a work area while the work is being done, so his responsibility replaces that of the owner who is out of possession and without control over the work or the premises. *Hader v. Coplay Cement Mfg. Co.*, 401 Pa. 139, 189 A.2d 271 (1963). In the present case, the township retained possession and control of the property because a township inspector stayed at the work site during the entire time the work was being performed. The inspector not only had the right to stop work, but he also supervised various aspects of the project, according to depositions taken. Additionally, defendant specifically contracted for these duties in its agreement with Nassaux-Hemsley.

Next, defendant contends that this action does not fall within the real property exception because plaintiff's claim is essentially one for negligent supervision, rather than for injuries caused by a dan-

gerous condition of the property. Defendant goes on to cite numerous cases where courts have held that the real property exception does not apply to injuries caused by a third party's activities on the property. See e.g., *Fizzano v. Borough of Ridley Park*, 94 Pa. Commw. 179, 503 A.2d 57 (1986) (plaintiff struck by hockey puck while skating in a public rink). Having reviewed case law on the matter, the court has no trouble finding that the seven-and-a-half foot trench that collapsed and killed decedent was a dangerous condition of real property within the meaning of the Political Subdivision Tort Claims Act.

As stated earlier, though, plaintiff's claim falls within the "utility service facilities" rather than the "real property" exception since the latter specifically excludes sewers. The court includes the above discussion to illustrate that if defendant's initial position were adopted, i.e., that the trench was not part of a sewer, then governmental immunity would still be waived under the real property exception, found in 42 Pa.C.S. §8542 (b) (3).

Defendant has failed to show that plaintiffs' inability to recover is clear and free from doubt. As such, defendant's motion for summary judgment must be denied.

## ORDER

And now, this April 15, 1987, defendant Washington Township's motion for summary judgment is denied.