# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ziaire Leger, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 253 C.D. 2025 |
| | : | Argued: April 13, 2026 |
| Gregory L. Martin, Zimmerman Mulch | : | |
| Products, LLC, Andy Zimmerman | : | |
| a/k/a Andrew Zimmerman, and | : | |
| Bethel Township | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                    HONORABLE MATTHEW S. WOLF, Judge
                    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
PRESIDENT JUDGE COHN JUBELIRER                    FILED:  May 19, 2026

Ziaire Leger (Leger) appeals the Order of the Court of Common Pleas of Lebanon County (trial court), exited February 13, 2025, certifying as final the trial court's Order, exited January 27, 2025, granting the Motion for Summary Judgment of Bethel Township (Township).[1]  In this tort action, Leger seeks to recover damages for severe injuries sustained as a passenger in a motor vehicle crash within the Township that Leger partially attributes to a dangerous condition at the intersection where the crash occurred.  The trial court granted the Township summary judgment based on governmental immunity under Section 8541 of the Political Subdivision Tort Claims Act (Act), 42 Pa.C.S. § 8541, reasoning Leger did not adduce evidence to establish that the Township had actual or constructive notice of any dangerous

---

[1] Gregory L. Martin, Zimmerman Mulch Products, LLC, and Andy Zimmerman a/k/a Andrew Zimmerman are not participating in this appeal.

condition at the intersection to defeat immunity. Leger argues the trial court erred because there is a genuine issue of material fact as to whether the Township had constructive notice of the alleged dangerous condition at the intersection and the trial court usurped the role of the jury in finding the Township lacked notice. After review, the Court reverses the trial court's grant of summary judgment to the Township and remands for further proceedings because there is a genuine issue of material fact as to whether the Township had constructive notice of the alleged dangerous condition at the intersection to defeat governmental immunity.

## I. BACKGROUND

### A. The Crash

At approximately 5:14 a.m. on December 1, 2020, a motor vehicle crash occurred between a sedan and a tractor-trailer at the intersection of Shirksville Road and State Route 343, also known as Pine Grove Street, in the Township. The traffic at the intersection of Shirksville Road and State Route 343 is controlled only by stop signs on Shirksville Road; thus, traffic traveling on State Route 343 has the right of way at the intersection. Before the crash, the sedan, in which Leger was the sole passenger, traveled west on Shirksville Road toward the intersection with State Route 343. At the same time, the tractor-trailer, operated by Gregory L. Martin and owned by Zimmerman Mulch Products, LLC, traveled north on State Route 343 toward the intersection with Shirksville Road. As the sedan pulled into the intersection to turn left onto State Route 343, the sedan and tractor-trailer collided. Leger suffered severe injuries as a result of the crash.

Leger, by and through his parents, commenced a tort action against Gregory L. Martin, Zimmerman Mulch Products, LLC, Andy Zimmerman a/k/a Andrew Zimmerman, and the Township by filing a complaint on March 7, 2022.

2

After a series of preliminary objections and an amended complaint, Leger filed a second amended complaint on February 7, 2023. Following additional preliminary objections, Leger and the Township filed a stipulation agreeing to revise or remove certain paragraphs of the second amended complaint relating to the Township.

Relevantly, Leger averred that the Township's negligence caused his injuries. Leger alleged that the "Township had a duty to design, construct and maintain its roads in a condition safe for travelers, including proper signage and intersection sight triangles." (Reproduced Record (R.R.) at 29a.) Leger further alleged that sometime before the crash, the Township "placed and/or directed to be placed" a stop sign at the subject intersection "with a sight distance of approximately 300 feet instead of the required intersection sight distance for the built environment of 500 feet." (*Id.* at 15a.) Leger averred that the stop sign created a dangerous condition at the intersection, of which the Township had actual and constructive notice, and that this dangerous condition caused his injuries. (*Id.* at 29a, 115a.) Leger alleged that the Township negligently created this dangerous condition by failing to, among others, install the stop sign on Shirksville Road at an appropriate location to maintain proper sight distance along State Route 343, perform or comply with traffic and engineering investigations into the safety of the intersection before installing the stop sign, design and erect appropriate traffic controls or signage at the intersection, inspect and maintain the roadways for safety, and install a proper traffic control device. (*Id.* at 30a-33a, 115a-18a.) Because the Township had notice of the dangerous condition, Leger averred that the Township is liable under the trees, traffic controls, and street lighting exception and the streets exception to governmental immunity pursuant to Section 8542 of the Act, 42 Pa.C.S. § 8542.

3

*B. Motion for Summary Judgment*

After discovery, the Township filed a Motion for Summary Judgment on August 26, 2024, arguing it is entitled to summary judgment for the following reasons. To start, the Township argued that Leger did not adduce any evidence to show the stop sign on Shirksville Road caused or contributed to his injuries. The Township reasoned that Leger's expert, Justin P. Schorr, Ph.D. (Dr. Schorr), did not indicate any faults as to the placement, location, and design of the stop sign in his expert report. Thus, the Township argued that it is entitled to summary judgment on any claim related to the stop sign.

Next, the Township argued that Leger did not adduce admissible evidence to show that the Township had notice of a dangerous condition at the intersection to defeat governmental immunity. The Township asserted that it lacked notice because its manager, Melissa Johnson (Johnson), and a road crew employee, Jay Bicksler (Bicksler), both of whom Leger deposed, testified that they lacked knowledge of prior accidents at the subject intersection. Additionally, the Township contended that it "does not have its own police force and therefore would not receive notice in that matter" and that there was no evidence to suggest the Township received notice of prior accidents from the Pennsylvania State Police (PSP). (R.R. at 96a.) The Township also argued an intersection crash document (Crash Report) produced by Leger and the testimony of James Lesher (Lesher), an employee of the Pennsylvania Department of Transportation (PennDOT) whom Leger deposed, did not establish notice. Although the Crash Report showed that 19 reported crashes occurred at the subject intersection from 2003 through 2019, the Township maintained that the Report is inadmissible because it is hearsay and does not "show that the other accidents occurred at 'substantially the same place and under the same or similar

4

circumstances.'" (*Id.* at 100a (citation omitted).) The Township further contended that Lesher's testimony on the Crash Report did not establish notice because Lesher did not know how, why, or by whom the Report was created, could not explain whether the prior crashes at the intersection were statistically significant, and did not know if the prior crashes occurred under any of the same conditions as the crash in this case. Therefore, the Township argued it is entitled to summary judgment based on governmental immunity under Section 8541 of the Act.

Lastly, the Township argued it is entitled to summary judgment because the intersection is not owned by the Township and is controlled by PennDOT. Citing Lesher's testimony, the Township contended that "the intersection is within PennDOT's right of way of [State Route] 343" and that "PennDOT maintains both [State Route] 343 and the right of way." (*Id.* at 103a.) Although "Lesher d[id] not know who designed or constructed the intersection," including the sight triangle at issue here, the Township explained that according to Bicksler, "the intersection was not designed by the Township[] and the sight triangle on the southeast corner is not owned by the Township." (*Id.* at 105a.) Additionally, the Township asserted that the embankment and vegetation blocking the sight triangle is within PennDOT's right of way along State Route 343. Because the Township did not design or construct the intersection and does not own or control the intersection, State Route 343, or the right of way, the Township argued that it is immune from liability and is entitled to summary judgment.[2]

---

[2] The Township also argued it is entitled to summary judgment on claims as to an "Intersection Ahead" sign. (R.R. at 95a-96a.) Leger agreed that the parties struck from the second amended complaint the claims as to an intersection ahead sign on Shirksville Road. (*Id.* at 367a; *see also id.* at 116a (stipulation).)

Leger responded that summary judgment in the Township's favor is inappropriate. To begin, Leger argued that Dr. Schorr's expert report did indicate faults with the stop sign on Shirksville Road, reasoning the report "concern[ed] the 'stop-controlled departure sight triangle' at the intersection." (*Id.* at 365a.) Moreover, Leger reasoned that in an affidavit filed after the Motion for Summary Judgment, Dr. Schorr clarified that "[t]he use of a stop sign at the subject intersection was never appropriate given the lack of sight distance" and that the "Township should have identified the insufficient sight distance when they first placed the stop sign." (*Id.* at 366a (emphasis omitted).) In addition, Leger asserted that according to PennDOT's employee, Lesher, the Township "is responsible for installing and replacing stop signs at the subject intersection." (*Id.* (emphasis omitted).) Furthermore, the Township's own employee, Bicksler, testified that he determines whether to replace stop signs within the Township, "he does not take measurements while replacing signs to make sure they are appropriately placed," he replaced the subject stop sign on Shirksville Road three times on behalf of the Township, and "that 'whoever designed the intersection or the road' has responsibility to insure that stop signs were properly placed." (*Id.*) Therefore, Leger argued the Township is not entitled to summary judgment on the claims related to the stop sign.

Leger also argued that the record includes ample evidence to establish that the Township had notice of a dangerous condition at the intersection to defeat governmental immunity. Citing Dr. Schorr's expert opinion, Leger asserted that the Township should have had reasonable notice that the stop sign was negligently placed on Shirksville Road, limiting the necessary sight distance along State Route 343, when it initially designed the intersection and erected the sign and each time it subsequently replaced the sign. Moreover, Leger argued the Crash Report

6

establishes notice, reasoning it shows that 13 of 19 crashes that occurred over the preceding 17 years occurred at "substantially the same place and under the same circumstances" as the crash involving Leger because the crashes occurred at the same intersection and were also "angle" crashes. (*Id.* at 375a, 695a.) Contrary to the Township's claim, Leger asserted the Crash Report is "admissible because it can be offered not for the truth of the matter, but to show that [the Township] had notice of the subject dangerous condition of the municipal roadway and stop sign/sight triangle." (*Id.* at 374a.) Even if inadmissible, Leger contended that the data underlying the Crash Report "need not be admissible to be relied upon by [his] expert." (*Id.*) As Dr. Schorr opined based on the "raw data" underlying the report, Leger explained, the Township "had the best opportunity to recognize" that "collision[s] consistently occurred at the subject intersection" and "should have identified the insufficient sight distance when [it] first placed the stop sign." (*Id.* at 375a-76a.) Accordingly, Leger argued the Township could reasonably be charged with notice to defeat governmental immunity.

Finally, Leger argued a genuine issue of material fact exists as to whether the Township is responsible for the intersection and sight triangle. Citing Dr. Schorr's report and Lesher's testimony, Leger asserted that "Shirksville Road is a local roadway under the ownership of [the] Township" and "[t]he intersection of Shirksville Road and [State] Route 343 is the responsibility of [the Township] according to PennDOT." (*Id.* at 378a.) Furthermore, based on correspondence between the Township and PennDOT introduced as an exhibit during Johnson's deposition, Leger reasoned that "the municipality is responsible for the intersection operation, essentially since it is the municipality's choice where and how to access the State highway system." (*Id.* at 382a.) Moreover, Leger argued summary

7

judgment is inappropriate on this issue because the Township impermissibly relied solely upon oral testimony, which it misquotes or misstates, to support its arguments in violation of *Borough of Nanty-Glo v. American Surety Co. of New York*, 163 A. 523 (Pa. 1932). For these reasons, Leger argued the trial court should deny the Township summary judgment.

In reply, the Township maintained that summary judgment is appropriate on the claims involving the stop sign. Citing Bicksler's testimony, the Township reasoned that it "did not 'erect' a stop sign" on Shirksville Road and "the only time [it] touched the stop sign before the . . . Leger accident was when it put a new sign on the same pole/post that had pre-existed the sign being knocked off the pole." (R.R. at 702a.) Further, the Township argued that "[Dr.] Schorr only state[d] that [the] Township 'would have been responsible for the original design,' not that it designed the intersection or the sight triangle." (*Id.* at 703a.) Consequently, the Township asserted that it cannot be held liable for "the design of the intersection, including the placement of the stop sign and the [sight] triangle," because it did not "undert[ake] a discretionary duty to design the intersection." (*Id.*) Additionally, the Township argued that the *Nanty-Glo* rule does not apply in this case because the Township relied on the oral testimony of Leger's witness (Lesher) and the report of Leger's expert (Dr. Schorr). Therefore, the Township reiterated that it is entitled to summary judgment based on governmental immunity.

Following a hearing on the Motion for Summary Judgment, Leger filed a sur reply requesting that the trial court consider this Court's decision in *Angell v. Dereno*, 134 A.3d 1173 (Pa. Cmwlth. 2016). Pursuant to *Angell*, Leger argued that "whether a local agency had either actual or constructive notice of a dangerous condition is a question of fact for the jury." (R.R. at 755a (alteration and emphasis

8

omitted).)  Because genuine issues of material fact exist and whether the Township had constructive notice is a question of fact for the jury, Leger asserted that the Township is not entitled to summary judgment.

The trial court subsequently granted the Township summary judgment in the January 2025 Order.  In an accompanying opinion, the trial court concluded that the Township is entitled to summary judgment based on governmental immunity despite the existence of genuine disputes as to whether the stop sign had faults or contributed to the crash and whether the Township owned and controlled the intersection.  The trial court opined that the Township has governmental immunity because Leger did not adduce evidence to establish that the Township had actual or constructive notice of a dangerous condition at the intersection.  The trial court reasoned that both employees of the Township, Johnson and Bicksler, "testified that they did not have knowledge of other accidents at the intersection at issue."  (Trial Court's Opinion (Op.) at 5.)  Further, Johnson "testified that the first time she became aware of the accident was when [Leger] sent notice after the incident had occurred" and "that the Township does not keep track of collisions that occur within the Township because it does not have its own police department."  (*Id.* at 7.)  Moreover, the trial court was "not persuaded by [Leger's] argument" that the evidence established that the Township had constructive notice, reasoning:

> The main piece of evidence [Leger] relies on to argue the Township had constructive notice of the dangerous conditions of the intersection was the [Crash Report]. [Leger] has not provided any evidence to show who created the [R]eport, when the [R]eport was created, or how the data reflected in the chart was collected.  Additionally, the [trial c]ourt finds that the evidence of other accidents is insufficient to show the Township had notice.  The [trial c]ourt acknowledges that constructive notice under the trees and traffic controls exception can be proven by evidence of substantially similar accidents.  However, [Leger] has failed to adduce evidence that any of the alleged 19 accidents reflected on the

9

[C]rash [R]eport occurred at "substantially the same place and under the same or similar circumstance[s.]"  The [C]rash [R]eport fails to show whether the previous incidents involved a driver who neglected to stop at the stop sign, where a vehicle was making a left turn onto State Route 343 from Shirksville Road, if the collision took place at night, or if there were concerns related to the stop sign, the placement of the stop sign, the sight triangle, an embankment, or the topography of the intersection.  Furthermore, [Leger] has failed to produce any evidence to show the Township ever received a copy of the [C]rash [R]eport.

(*Id.* at 6-7.)  Although genuine disputes existed on other issues, the trial court therefore concluded that the Township is entitled to summary judgment based on governmental immunity under Section 8541 of the Act.

Leger now appeals the trial court's February 2025 Order certifying as final the January 2025 Order.

## II.    DISCUSSION

### A. Summary Judgment Standards

On appellate review, this Court "may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion."  *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 902 (Pa. 2007).  A trial court may grant summary judgment "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  *Sellers v. Township of Abington*, 106 A.3d 679, 684 (Pa. 2014) (citation omitted).  Because summary judgment presents a question of law, this Court's standard of review is de novo. *Id.*  "To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record." *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010).

10

For purposes of summary judgment, the record includes "all pleadings, as well as any depositions, answers to interrogatories, admissions, affidavits, and expert reports." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009). In considering summary judgment, "the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party" and "resolve all doubts as to the existence of a genuine issue of material fact against the moving party." *Summers*, 997 A.2d at 1159. Moreover, under *Nanty-Glo*, "[h]owever clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the [factfinder] to decide . . . as to the law applicable to the facts." 163 A. at 524 (citation omitted). In other words, "testimonial affidavits and oral depositions of the moving party, without supporting documents, are insufficient to support a motion for summary judgment" as "the credibility of the testimony is still a matter for the jury." *Sanchez-Guardiola v. City of Philadelphia*, 87 A.3d 934, 937-38 (Pa. Cmwlth. 2014) (citation omitted). Nevertheless, "[t]he *Nanty*[-]*Glo* rule does not preclude the grant of summary judgment when the moving party relies on the testimonial evidence of an adverse party." *Kniaz v. Benton Borough*, 642 A.2d 551, 553 (Pa. Cmwlth. 1994). With the foregoing in mind, the Court turns to the parties' arguments.

### B. Parties' Arguments

On appeal, Leger argues the trial court erred in granting the Township summary judgment for two principal reasons. First, Leger argues the trial court erred by making a factual determination that the Township lacked constructive notice of a dangerous condition at the intersection. Leger asserts that a poorly designed intersection and a negligently placed stop sign, among other factors, created a dangerous condition by limiting sight distance for vehicles traveling west on

11

Shirksville Road looking south onto State Route 343. Leger contends that whether the Township had constructive notice of this dangerous condition to defeat governmental immunity is a question of fact for the jury, not the trial court. Based on the record evidence, Leger argues that a jury could reasonably find that the Township had notice of the dangerous condition because the Township designed the intersection and is responsible for the safety of and installing and replacing signage at the intersection. In addition, Leger asserts that the Crash Report establishes constructive notice because it shows that 19 reported crashes occurred at the same intersection over the past two decades, including 13 crashes that were "angle" crashes similar to the crash in this case. (Leger's Brief (Br.) at 20.) Nevertheless, Leger maintains that it is not necessary to prove notice of the dangerous condition because the Township created the condition by designing the intersection and negligently placing the stop sign. Either way, Leger argues that it is for the jury to decide whether the Township had constructive notice of the dangerous condition at the intersection.

Second, Leger argues the trial court erred by not following summary judgment standards. Leger asserts that the trial court usurped the role of the jury by concluding that it was not "persuaded" by the evidence proffered by Leger. (*Id.* at 25.) Leger also contends that in finding the evidence unpersuasive, the trial court focused on the Crash Report while ignoring record evidence that the Township patrolled for problems with stop signs. Furthermore, Leger argues the trial court's conclusion that the Township lacked constructive notice improperly relied on oral testimony from the Township's witnesses in violation of *Nanty-Glo*. Leger asserts it is for the jury, not the trial court, to decide whether the witnesses' testimony is credible. Because the trial court decided to believe the oral testimony of the Township's

12

witnesses while ignoring Leger's contrary evidence, Leger argues the trial court erred and must be reversed on appeal.

The Township counters that the trial court properly granted summary judgment. As for notice, the Township argues that Leger has not adduced any admissible evidence to establish that the Township had notice of a dangerous condition of the intersection. Focusing on the Crash Report, the Township asserts that Leger did not produce evidence to show that the Township "had actual notice of a dangerous condition or prior accidents at the intersection" because Leger did not show that the Township "received or should have received notice of other accidents at the intersection." (Township's Br. at 33.) The Township further asserts that Leger did not prove that the other crashes at the intersection "occurred at 'substantially the same place and under the same or similar circumstances'" to establish constructive notice. (*Id.* at 32-33 (citation omitted).) The Township contends that Leger's expert did not establish constructive notice because Dr. Schorr's opinion that the Township was in the best position to recognize "that collisions were consistently occurring at the subject intersection" is a "bald unsupported assertion[]" as Dr. Schorr did not "point to specific facts or empirical data . . . to support his opinion[]." (*Id.* at 33-35 (emphasis omitted).) The Township also argues Lesher's testimony and the Crash Report did not establish constructive notice because neither Lesher nor the Report established that the prior crashes occurred under the same or similar circumstances as the crash involving Leger. Therefore, the Township asserts that the trial court "was correct in discounting" Dr. Schorr's expert report, Lesher's testimony, and the Crash Report to conclude that Leger did not establish that the Township had actual or constructive notice of a dangerous condition at the intersection to defeat governmental immunity. (*Id.* at 38.)

13

Moreover, the Township argues that neither the trees, traffic controls, and street lighting exception nor the streets exception to governmental immunity are available to Leger. The Township contends that the trees exception does not apply because the vegetation along State Route 343 that Leger claims limited the sight view from Shirksville Road is not "under the care, custody or control" of the Township. (*Id.* at 21-23.) Similarly, the Township asserts that the streets exception does not apply because the Township does not own the vertical curve along State Route 343 that Leger claims contributed to the limited sight view. The Township further argues that the traffic controls exception is not available to Leger because the Township has no authority to remove the stop sign on Shirksville Road and implement a different traffic-control scheme at the intersection with State Route 343. Rather, the Township asserts that PennDOT is responsible for traffic control at the intersection, and without PennDOT's written approval, which was not forthcoming, the Township cannot change traffic controls. Finally, while not raised before the trial court, the Township argues it should not be held liable for Leger's injuries because the driver of the sedan in which he was a passenger caused the crash by not stopping at the stop sign and yielding to the traffic with the right of way. For these reasons, the Township argues the trial court must be affirmed.

*C. Analysis*

Pursuant to Section 8541 of the Act, "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. In other words, local agencies, including townships, "are generally immune from tort liability, except in circumstances where immunity is expressly waived." *Starr v. Veneziano*, 747 A.2d 867, 871 (Pa. 2000).

14

The General Assembly has expressly waived governmental immunity for local agencies when two conditions are satisfied: (1) the damages would be recoverable under a statutory or common law cause of action against a person unprotected by governmental immunity, and (2) the negligent act of the local agency or its employee that caused the injury falls within one of the enumerated categories listed in Section 8542(b) of the Act. 42 Pa.C.S. § 8542(a).

Relevant to this case, the trees, traffic controls, and street lighting exception in Section 8542(b)(4) of the Act provides that a local agency may be liable for:

> A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542(b)(4). Similarly, the streets exception in Section 8542(b)(6)(i) of the Act provides that a local agency may be liable for:

> A dangerous condition of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542(b)(6)(i).

To establish liability under the above exceptions to governmental immunity, the plaintiff must prove that "the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition." 42 Pa.C.S. § 8542(b)(4), (6)(i). Whether the local agency could reasonably be charged with notice under the circumstances, i.e., constructive notice, "requires that the dangerous condition be apparent upon reasonable inspection." *Dep't of Transp. v. Patton*, 686 A.2d 1302, 1304 (Pa. 1997). "[E]vidence of similar accidents occurring at substantially the same place and under the same or similar circumstances may, in the sound discretion of the trial Judge, be admissible to prove constructive notice of a . . . dangerous condition." *Stormer v. Alberts Constr. Co.*, 165 A.2d 87, 89 (Pa. 1960) (emphasis omitted).

Generally, "[w]hether a local agency has either actual or constructive notice of a dangerous condition is a question of fact for the jury." *Angell*, 134 A.3d at 1181; *accord Medicus v. Upper Merion Township*, 475 A.2d 918, 921 (Pa. Cmwlth. 1984) (explaining that whether a municipality has notice of a dangerous condition "is a question for the factfinder"). The trial court may determine whether a local agency has notice "only when reasonable minds could not differ as to the conclusion." *Angell*, 134 A.3d at 1181-82 (quoting *Patton*, 686 A.2d at 1305). "[I]f there is **any dispute** created by the evidence, the court is **not** permitted to decide the issue." *Id.* at 1182 (emphasis added) (quoting *Patton*, 686 A.2d at 1305).

In *Angell*, for example, this Court concluded that a trial court erred in granting summary judgment to two municipalities because a factual dispute existed as to whether the municipalities had notice of an alleged dangerous condition of a road. *Id.* at 1183. In that case, the estate of a deceased motorcyclist sought damages against the municipalities, attributing the motorcyclist's death to a dangerous

16

condition of the road where the motorcyclist was clipped by a truck. On appeal, the estate argued the trial court erred by making a factual finding as to notice and discounting deposition evidence and an expert report. This Court agreed, reasoning:

> [T]here is a factual dispute on the question of constructive notice. Police officers from the [m]unicipalities patrolled near the crash site prior to the fatal accident, and [the estate's expert] opined that the danger should have been identified on a routine inspection by the [m]unicipalities. Constructive notice is a question of fact to be decided by the jury, not the court. If the dangerous conditions, i.e., a too-narrow street with limited sight distance, are deemed by the jury to be "apparent upon reasonable inspection," the jury could find that the [m]unicipalities had notice.

*Id.* (italics omitted). Therefore, this Court held that "[t]he trial court erred in granting summary judgment on the issue of actual and constructive notice."[3] *Id.*

By contrast, in *Lamberson v. Southeastern Pennsylvania Transportation Authority*, this Court held that a trial court did not err in entering judgment against the plaintiff because she did not produce sufficient evidence to establish constructive notice of an alleged dangerous condition. 335 A.3d 423, 429 (Pa. Cmwlth. 2025). In that case, a portion of a Southeastern Pennsylvania Transportation Authority (SEPTA) train platform collapsed without warning, injuring the plaintiff. After the plaintiff rested her case during a jury trial, the trial court granted SEPTA a nonsuit.

---

[3] The Township argues that *Angell* is inapposite to the case at bar because *Angell* involved the intersection of two municipal roads and that our Supreme Court's decision in *Starr* is dispositive because, like in this case, *Starr* "concern[ed] an intersection between a state highway and a township road." (Township's Br. at 26 n.8.) To the extent the Township argues that *Angell* is inapposite and *Starr* is dispositive on the issue of whether the Township had notice of a dangerous condition to defeat governmental immunity, we disagree. In *Angell*, this Court's decision on the issue of notice was not predicated upon the fact that the two intersecting roads were municipal roads. 134 A.3d at 1181-83. Additionally, *Starr* did not concern whether a township had sufficient notice of a dangerous condition to defeat governmental immunity, but whether a plaintiff established a duty of care on the part of a township to install a traffic control device at an intersection of a state highway and township road. 747 A.2d at 869, 872-75.

On appeal, the plaintiff argued the trial court erred "because she presented evidence that, if believed by the jury, establishes that SEPTA had constructive notice that the train platform was in disrepair and needed repairs before the accident." *Id.* at 425. The plaintiff asserted that "a video SEPTA took of the accident" and "three photographs, showing a view of the location where she fell and the platform's substantial deterioration, . . . were sufficient to establish constructive notice." *Id.* We disagreed. This Court reasoned the plaintiff did not produce any evidence that showed "the alleged dangerous condition was 'apparent upon reasonable inspection'" because "[t]he video did not reveal an observable defect or hazard on the platform prior to the actual accident" and the photographs "were taken after the accident not before it." *Id.* at 426, 428 (emphasis and citations omitted). Accordingly, this Court affirmed the trial court because "'reasonable minds could not differ as to the conclusion' that [the plaintiff] did not establish constructive notice." *Id.* at 429 (citation omitted).

Here, Leger adduced sufficient evidence that creates a genuine dispute as to whether the Township had constructive notice before the crash of the alleged dangerous condition, i.e., a misplaced stop sign limiting the required sight distance, rendering the issue of notice a question for the jury. For starters, Johnson testified that the Township has "responsibility for . . . Shirksville Road" and is "responsible for signage[,] . . . [i]ncluding the stop sign." (R.R. at 501a, 503a, 513a.) Consistent with Johnson, Bicksler testified that "one of [the] main concerns" of the Township road crew on a daily basis is "looking for signs" that need "to get fixed" because the sign is dented, crooked, worn, run over, or the like. (*Id.* at 583a, 585a-86a.) Indeed, Bicksler testified that the Township replaced the stop sign at issue here approximately 10 months before the crash involving Leger after a truck hit the sign,

18

"ripp[ing] it off the post." (*Id.* at 601a-02a.) Additionally, Lesher testified that the Township is responsible for Shirksville Road and the subject intersection, including the location of the stop sign and installing and replacing signage. (*Id.* at 414a-15a.) Moreover, Dr. Schorr opined that the "Township would have been responsible for the initial design" of the intersection because "Shirksville Road is a local roadway under the ownership of [the] Township." (*Id.* at 396a.) And based on the raw data underlying the Crash Report, Dr. Schorr opined that the Township "would have been the entity which had the best opportunity to recognize, at some point during the 17 years preceding the subject collision, that collisions were consistently occurring at the subject intersection." (*Id.* at 369a, 399a.) Dr. Schorr also testified via affidavit that the "Township should have identified the insufficient sight distance when they first placed the stop sign and had opportunities to remedy their mistake during the maintenance projects which occurred throughout the years prior to the subject collision." (*Id.* at 403a.)

Even without considering the Crash Report itself, reasonable minds could differ as to whether the alleged dangerous condition was apparent upon reasonable inspection before the crash involving Leger based on the foregoing evidence. The evidence suggests that the Township is responsible for the subject stop sign on Shirksville Road, patrolled for issues with stop signs, including at the subject intersection, and should have identified the alleged danger caused by the location of the stop sign. If the alleged dangerous condition is deemed by the factfinder to be apparent upon reasonable inspection, the factfinder could find that the Township had constructive notice. As *Angell* and *Lamberson* illustrate, any evidence that could establish that a dangerous condition is "apparent upon reasonable inspection" before the incident occurred is sufficient to render the issue of constructive notice a question

19

for the factfinder.  *Angell*, 134 A.3d at 1183; *Lamberson*, 335 A.3d at 428.  Because Leger produced such evidence, whether the Township had constructive notice is a question for the factfinder.  *See Angell*, 134 A.3d at 1183; *Lamberson*, 335 A.3d at 428.  Therefore, the trial court erred in granting the Township summary judgment on the issue of notice.[4]  *See Angell*, 134 A.3d at 1183.

## III.    CONCLUSION

For the foregoing reasons, the trial court's grant of summary judgment to the Township is reversed and this matter is remanded for further proceedings.

_____
RENÉE COHN JUBELIRER, President Judge

---

[4] This Court does not opine on whether the Township is entitled to summary judgment on the other grounds advanced by the Township as either the trial court concluded factual disputes remain on those issues or the Township raises the grounds for the first time on appeal.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ziaire Leger,                                    :
                          Appellant              :
                                                 :
              v.                                 :     No. 253 C.D. 2025
                                                 :
Gregory L. Martin, Zimmerman Mulch               :
Products, LLC, Andy Zimmerman                    :
a/k/a Andrew Zimmerman, and                      :
Bethel Township                                  :

**O R D E R**

**NOW**, May 19, 2026, the Order of the Court of Common Pleas of Lebanon County, exited January 27, 2025, certified as final by the Order exited February 13, 2025, is **REVERSED**, and this matter is **REMANDED** for further proceedings. Jurisdiction relinquished.

_____
RENÉE COHN JUBELIRER, President Judge